UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
                                    )
**NELLIE RAMOS, et al.,**           )
                                    )
    **Plaintiffs,**              )
                                    )
    **v.**                       )    Civil Action No. 13-10065-DJC
                                    )
**BUREAU OF INDIAN AFFAIRS, et al.,**)
                                    )
    **Defendants.**              )
                                    )
                                    )
_____ )

**MEMORANDUM AND ORDER**

**CASPER, J.**                                                                                   March 28, 2014

**I.    Introduction**

The Plaintiffs, enrolled members of the Mashpee Wampanoag Tribe ("Tribe"), have sued the Defendants, the Bureau of Indian Affairs ("BIA"); Michael Black, Director of the BIA; Mike Smith, Deputy Director; Franklin Keel, Regional Director; and Kevin Washburn, Assistant Secretary (collectively, the "Defendants") seeking an injunction requiring the Defendants to conduct an investigation into the Tribe's 2009 election and to take action to ensure that the Tribe's elections are properly conducted. D. 9 at 10. The Defendants have moved to dismiss the complaint for lack of subject matter jurisdiction, failure to state a claim and failure to join a necessary party. D. 10. Because the Court concludes that it does not have subject matter jurisdiction over this matter, the Court ALLOWS the motion to dismiss.

## II. Standard of Review

"It is the plaintiff's burden to prove the existence of subject matter jurisdiction." Aversa v. United States, 99 F.3d 1200, 1209 (1st Cir. 1996). "Whenever it appears . . . that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) (quoting Fed. R. Civ. P. 12(h)(3)) (quotations omitted).

Where, as here, the Defendants' challenge to the subject matter jurisdiction concerns the sufficiency (as opposed to accuracy) of the jurisdictional facts, the Court "must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa, 99 F.3d at 1209–10; see Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (distinguishing between standard for sufficiency versus accuracy challenges to subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and noting that for the former that the court "must credit the plaintiff's well-pleaded factual allegations (usually taken from the complaint, but sometimes augmented by an explanatory affidavit or other repository of uncontested facts), draw all reasonable inferences from them in [plaintiff's] favor, and dispose of the challenge accordingly").

## III. Factual Allegations

This summary of facts is as alleged in the amended complaint, D. 9. The Plaintiffs allege that in 2009, the Tribe improperly returned voting privileges to four "shunned" tribal members and they were permitted to vote in the Tribe's 2009 General Election. D. 9 ¶¶ 13–14, 18. The Plaintiffs further claim that the 2009 General Election was conducted in a number of other improper ways, including the Election Committee's failure to maintain the election records in accordance with Tribal law and failing to retain voting records properly. Id. ¶ 19–20.

Because the Plaintiffs contend that the Election Committee engaged in substantial misconduct, on February 9, 2009, Plaintiff Nellie Ramos ("Ramos") sent a written request to the Election Committee offering testimony from other tribal members of the misconduct and requesting a new election. Id. ¶ 22. The chair of the Election Committee denied this request. Id.

On February 26, 2009, Tribe members met with BIA officials in Washington, D.C. to discuss the election misconduct and irregularities. Id. ¶ 28. The BIA asked for additional documentation, which the members provided after the meeting. Id. On July 31, 2009, a group of Tribal elders met with BIA officials in Washington, D.C., asking the BIA to investigate and nullify the 2009 election results and oversee a new General Election. Id. ¶ 29. The BIA again asked for additional information to clarify the request. Id. Tribal members followed up with additional written requests to the BIA on August 5, 2009 and November 11, 2011. Id. ¶¶ 30–31. On December 28, 2012, Tribal members sent, through counsel, a written request to the BIA asking for a response within ten days to their letter and requesting that the BIA oversee the upcoming February 10, 2013 General Election. Id. ¶¶ 34. The Plaintiffs assert that the BIA has failed to respond or act upon their requests. Id. ¶¶ 40–41.

**IV.     Procedural History**

The Plaintiffs filed their complaint on January 11, 2013, D. 1, and an amended complaint on March 19, 2013. D. 9. The Defendants have now moved to dismiss the amended complaint. D. 10. After a hearing on January 14, 2014, the Court took this matter under advisement. D. 20.

**V.     Discussion**

The Defendants raise three grounds for dismissal: (1) lack of subject matter jurisdiction; (2) failure to state a claim on which relief may be granted; and (3) failure to join the Tribe, a

necessary party to the action. The Court concludes that it does not have subject matter jurisdiction over the Plaintiffs' claims and ALLOWS the motion to dismiss.

A court has jurisdiction over a case when there is an actual case or controversy at all stages of review. Overseas Military Sales Corp. v. Giralt–Armada, 503 F.3d 12, 16 (1st Cir. 2007). "[W]hen the issues presented are no longer live or when the parties lack a legally cognizable interest in the outcome . . . a case or controversy ceases to exist, and dismissal of the action is compulsory." Libertarian Party of New Hampshire v. Gardner, 638 F.3d 6, 12 (1st Cir. 2011), cert. denied, 132 S. Ct. 402 (U.S. 2011) (citations and quotations omitted). Likewise, a case is moot if the Court cannot afford Plaintiffs the remedy they seek. See Goodwin v. C.N.J., Inc., 436 F.3d 44, 48–51 (1st Cir. 2006).

### A. The Plaintiffs Have Not Shown that the Court Can Grant Them the Relief They Seek

Even assuming that the case is not moot because, as the Defendants contend, a 2013 General Election has occurred since the 2009 General Election that Plaintiffs seek to challenge, D. 11 at 6-7, the Court cannot grant Plaintiffs the relief they seek. In their complaint, the Plaintiffs seek an injunction requiring the Defendants to (1) conduct an investigation into the allegations set forth in their August 5, 2009 letter to the BIA, i.e., whether "the Election Committee is following the procedures then and now existing that govern the conduct of elections and the preservation of election materials, and examine the enrollment records to determine that only eligible members who are able to satisfy the requirements of tribal membership outlined in the Constitution, have been allowed to enroll" and (2) take any necessary action to "ensure that the Tribe['s] elections are conducted in an open and fair manner that respects Tribal law." D. 9 at 45. The Plaintiffs have not demonstrated, however, that the

BIA have a duty to investigate or intervene in tribal elections in the manner that the Plaintiffs seek and therefore, the Court cannot require the BIA to do so.

In the complaint, the Plaintiffs assert that "[p]ursuant to 5 U.S.C. §§ 701–706, a person may challenge the action or inaction of an agency and force agency action that has been unlawfully withheld or unreasonably delayed." D. 9 ¶ 39. In support of this assertion, the Plaintiffs allege that the Defendants "unlawfully failed to respond to [their] repeated request that [the Defendants] investigate the allowance of ineligible voters to vote in the 2009 General Election, to set aside the election results and institute an intermediate government, and oversee the conduct of a new election." D. 9 ¶ 40. The Plaintiffs further allege that the Defendants "unreasonably delayed a response to [their] request" and that the Defendants "owe a duty to respond to correspondence and requests indicating that election results certified to BIA violated Tribal Law." Id. ¶¶ 41–42.

The Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706, grants courts the power to "compel agency action unlawfully withheld or unreasonable delayed."[1] 5 U.S.C. § 706(1). In determining whether to compel an agency to take action under the APA where some "agency inaction" is alleged, the Court must be able to conclude that the Plaintiffs have asserted that an agency "failed to take a *discrete* agency action that it is *required to take*." Scarborough Citizens Protecting Res. v. U.S. Fish & Wildlife Serv., 674 F.3d 97, 99 (1st Cir. 2012) (emphasis in original) (quoting Norton v. Southern Utah Wilderness Alliance, 542 U.S. 55, 64 (2004) (quotations and emphasis omitted)). The Court, however, agrees with the Defendants that the

---

[1] As the Plaintiffs note, D. 12 at 5, the "APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." Califano v. Sanders, 430 U.S. 99, 107 (1977). Rather, the APA provides a federal right of action when the Court already has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Conservation Law Found., Inc. v. Busey, 79 F.3d 1250, 1261 (1st Cir. 1996).

Plaintiffs do not "identify a source of law imposing a duty on the [BIA] officials to take the requested actions." D. 11 at 8. The only law on which the Plaintiffs rely in both the complaint and their opposition to this motion is the APA. D. 9 ¶¶ 37–45; D. 12 at 5–6. Although the Plaintiffs argued at the hearing that the BIA met with tribal members and held itself out as having the ability to assist in this matter, the Plaintiffs have not directed the Court to any authority, statutory or otherwise, that would require the BIA to take the investigatory and remedial action they seek. Indeed, the Defendants have asserted in their papers and at oral argument that no such source of law exists, as the BIA is not "empowered to interfere" with a tribe's sovereign authority to conduct its own elections. D. 11 at 11. See Nulankeyutmonen Nkihtaqmikon v. Impson, 503 F.3d 18, 29 (1st Cir. 2007) (holding that the plaintiffs were entitled to bring their claims against the BIA because the federal government had a duty, through the BIA, to "ensure that the parties to a lease of Indian land have given adequate consideration to the impacts of the lease on . . . neighboring lands and the environment" because that duty was provided for by a federal statute); Miccosukee Tribe of Indians of Florida v. United States, 980 F. Supp. 448, 461 (S.D. Fla. 1997), aff'd sub nom., 163 F.3d 1359 (11th Cir. 1998) (citing cases) (noting that "despite the general trust obligation of the United States to Native Americans, the government assumes no specific duties to Indian tribes beyond those found in applicable statutes, regulations, treaties or other agreements" and upon examination of several applicable statutes and agreements, concluding that the tribe had not "introduced evidence that the [federal agencies] assumed a duty under any of these statutes and agreements to provide the Tribe with the flood relief it has requested in this case").

In comparison, the court in Vigil v. Andrus, 667 F.2d 931, 939 (10th Cir. 1982), held that the BIA "acted improperly in failing to follow APA rulemaking procedures before adopting

changes affecting large numbers of Indian families," namely, free lunch for school children, on the basis that "when depriving the Indians of benefits that have long been provided them, the government must bend over backwards to assure fair treatment." Id. (quotations omitted). In Vigil, however, the court noted a "congressional expectation [that] gave specific meaning to the government's trust responsibilities" in this regard, citing to Congressional reports providing evidence of such an expectation. Id. at 934. Still, the Vigil court was "unwilling to find an Indian entitlement that would prohibit the BIA" from changing the free lunch program, id. at 935, on the basis that "the federal government generally is not obligated to provide particular services or benefits in the absence of a specific provision in a treaty, agreement, executive order, or statute." Id. at 934. Here, as discussed above, the Plaintiffs have offered no legal basis – statutory, regulatory, or otherwise – for their assertion that the BIA had a duty to intervene in the Tribe's elections.

Further, while the Plaintiffs also argue that the "Defendants are obligated to honor their fiduciary duties to Plaintiffs and investigate allegations of misconduct where Plaintiffs have no other recourse," D. 12 at 4, such contention is contrary to the law in this area. "[T]he general trust relationship between the United States and the Indian people is insufficient to establish specific fiduciary duties." Nulankeyutmonen Nkihtaqmikon, 503 F.3d at 31 (quoting United States v. Navajo Nation, 537 U.S. 488, 506 (2003)) (quotations omitted). "Substantive statutes and regulations must expressly create a fiduciary relationship that gives rise to defined obligations." Nulankeyutmonen Nkihtaqmikon, 503 F.3d at 31; compare id. (holding that BIA's fiduciary duty was provided for by the Leasing Act and concluding that "the Plaintiffs' Trust Obligation claim [could not] stand alone").

Accordingly, where Plaintiffs have not presented a proper APA claim, and certainly no such claim based upon a final agency action for which the Plaintiffs have exhausted all administrative remedies, D. 11 at 11-12, the Court cannot grant the relief they seek.

### B. The Plaintiffs Have Not Proven a Waiver of Sovereign Immunity

Moreover, the Plaintiffs also have not demonstrated that the BIA has waived sovereign immunity. "The United States, as sovereign, is immune from suit save as it consents to be sued." United States v. Sherwood, 312 U.S. 584, 586 (1941). A waiver of sovereign immunity "cannot be implied but must be unequivocally expressed" in statutory language. United States v. King, 395 U.S. 1, 4 (1969); Lane v. Pena, 518 U.S. 187, 192 (1996). "Absent express waiver of sovereign immunity, federal courts lack subject matter jurisdiction over suits against the United States." Limar Shipping Ltd. v. United States, 324 F.3d 1, 6 (1st Cir. 2003). The Plaintiffs have the burden of proving the Defendants' waiver of sovereign immunity. Hanley v. United States, No. 94-1315, 1994 WL 723678, at *2 (1st Cir. Oct. 5, 1994).

Here, the parties do not dispute that the Defendants are agents of the United States. D. 9 ¶¶ 3–5; D. 11 at 9–11. The Defendants, therefore, receive the protection of sovereign immunity unless the Plaintiffs demonstrate otherwise. Larson v Domestic & Foreign Commerce Corp., 337 U.S. 682, 695 (1949); Muirhead v. Mecham, 427 F.3d 14, 18 (1st Cir. 2005) (noting that the APA's waiver of sovereign immunity "applies to actions of any agency or its officers"). As the Defendants recognize, violation of Section 706(1) of the APA can provide a basis for the waiver of sovereign immunity. 5 U.S.C. § 702 (providing that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages and stating a claim that an agency or an

officer or employee thereof acted or failed to act in an official capacity or under color of legal authority shall not be dismissed nor relief therein be denied on the ground that it is against the United States or that the United States is an indispensable party"); D. 11 at 9. While the Plaintiffs assert in their opposition that they have succeeded in showing a waiver of sovereign immunity under the APA, D. 12 at 5–7, such waiver of sovereign immunity does not apply here because, as discussed above, the Plaintiffs have not shown that they are entitled to relief under the APA. Therefore, the Plaintiffs have not met their burden of showing a waiver of sovereign immunity.

For all of the foregoing reasons, Plaintiffs have not met their burden of proving that the Court has subject matter jurisdiction.

## VI. Conclusion

For these aforementioned reasons, this Court does not have subject matter jurisdiction and ALLOWS the Defendants' motion to dismiss, D. 10, on this ground.[2]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[2] In light of this ruling regarding subject matter jurisdiction, the Court need not reach the remainder of the grounds for the motion to dismiss. Arbaugh, 546 U.S. at 506.